Terry L. Boyer, Petitioner *v.* Commonwealth of Pennsylvania, Unemployment Compensation Board of Review, Respondent.

Argued March 13, 1980, before Judges WILKINSON, JR., MENCER and MACPHAIL, sitting as a panel of three.

*Michael Goldberg,* with him, *Marion Cocose* and *Marian Frankstone,* for petitioner.

*Charles G. Hasson,* Assistant Attorney General, with him, *Richard Wagner,* Chief Counsel, and *Edward G. Biester, Jr.,* Attorney General, for respondent.

OPINION BY JUDGE MACPHAIL, May 7, 1980:

Terry L. Boyer (Petitioner) brings this appeal from a decision of the Unemployment Compensation Board of Review (Board) which affirmed a referee's order denying him unemployment compensation benefits. The referee and before her the Bureau (now Office) of Employment Security had determined that Claimant was discharged from his employment with the City of Lancaster (Employer) because of willful misconduct and, therefore, was not eligible for unemployment compensation benefits pursuant to Section 402(e) of the Unemployment Compensation Law, Act of December 5, 1936, Second Ex. Sess., P.L. [1937] 2897, *as amended,* 43 P.S. §802(e). On appeal, Claimant raises three issues for our consideration: whether he was discharged from his employment as a result of the exercise of his First Amendment right to free speech; whether the conduct resulting in his dismissal constituted wilful misconduct as a matter of law; and whether the Board's findings of fact were sufficient to support the denial of benefits. For the reasons which follow, we affirm.

Claimant was employed as a Traffic Technician I by Employer. His last day of work was May 17, 1978 and his final rate of pay was $165 per week. During his period of employment, Claimant received a number of written memos from his supervisor, Roy Falcone, concerning his job performance. In response to the final memo, Claimant wrote a letter to Falcone

entitled "Unjustified Memos."[1]  Claimant also sent copies of his letter to the Mayor of Lancaster, the City's Director of Public Works, the City's Personnel Manager, and the President of Local 1896 of the

---

[1] Because of the importance of the First Amendment issue, we set forth Claimant's letter to Falcone in its entirety:

CITY OF LANCASTER

MEMORANDUM

Date May 4, 1978

To: Roy Falcone, City Traffic Engineer
From: Terry Boyer, Traffic Technician I
Subject: Unjustified Memos

In response to these outrageous attempts to exploit and undermine my character as a city official, a public figure in this community, and a city tax-payer. I am responding to these memos presented to me as listed below:

November 3, 1977
November 3, 1977
December 5, 1977
April 5, 1978
April 27, 1978

The purpose of this letter is constructed mainly to constitute a reprisal concerning your ruthless attacks upon my character as an employee of the City of Lancaster. Your inaccurate and calculating underhanded tactics have caused an inevitable reprisal on my behalf. Let me begin this reprisal by stating, that as an employee for the City of Lancaster holding the position of Traffic Technician I, I am fully aware as to the reason I was promoted to this position other than my qualifications stated. I am also fully aware that there was no training prior to my new position or after. Now, to my knowledge, the word training, meaning explaining and teaching while demonstrating, does not coincide with your definition of the word 'training', nor does it coincide with the dictionary's definition of the word.

Concerning my attitude on the job, whether it be working inside with my fellow employees or while driving the city car, I have never been aware or made aware by any my peers that my attitude was poor, which here again brings me to believe that your reprimands have been initiated falsely and maliciously, possibly due to personal racial overtones.

American Federation of State, County, and Municipal Employees. Shortly after he received the copy of the letter, the Personnel Manager discharged Claimant.

The burden of proving willful misconduct is on the employer. *Roach v. Unemployment Compensation Board of Review*, 31 Pa. Commonwealth Ct. 424, 426, 376 A.2d 314, 315 (1977). Where, as here, the party bearing the burden of proof prevails before the Board, we must determine on appeal whether an error of law has been committed and whether any necessary finding of fact is unsupported by substantial evidence. *Roach* at 427, 376 A.2d at 315; *Unemployment Compensation Board of Review v. Tumolo*, 25 Pa. Com-

---

Concerning 'Carelessness and excessive time spent in fulfilling duties' during the period between March 29 and April 3, If you will re-check your memo, Mr. Falcone, you stated that and I quote, 'It took two men to get the data for a simple sketch because of my careless work and poor attitude'. Then with very little thought you stated that 'Essentially, this is what Bill Maney had to do in the final analysis anyway'. If this is the case Roy, you wasted time and the tax-payers money by sending me, an untrained man, for this particular task.

You sent a man with a poor work attitude and careless to do the job that Bill Maney, who is trained for this position and paid for this position, should have done in the beginning.

I have also discussed your unorthodox supervision with other city employees. They have expressed distaste for your attitude and your inability to deal with your subordinates.

Last of all, Roy, to discuss your last memo dated April 27, 1978, would only be reiterating the previous paragraph.

In conclusion, Roy, I feel justified in my reactions to remind you that I too have resolved to limit myself to unnecessary grievances that neither one of us should endure.
cc: Mayor Scott
    Arthur Morris, Director of Public Works
    Howard Goldberg, Personnel Manager
    Lee Mowery, President of Local 1896 A.F.S.C.M.E.

monwealth Ct. 264, 267, 360 A.2d 763, 765 (1976). Because Employer prevailed before the Board, it is entitled to the benefit of any inferences which can be reasonably and logically drawn from the evidence on the record. *Nehi Bottling Co. v. Unemployment Compensation Board of Review,* 27 Pa. Commonwealth Ct. 251, 253, 366 A.2d 594, 595 (1976). Of course, questions of credibility, resolution of conflicts in the evidence presented, and a determination of the weight to be given the evidence are matters for the Board to determine. *Roach* at 427, 376 A.2d at 315.

We turn first to Claimant's argument that he was discharged from his employment for exercising his First Amendment right to free speech. The Supreme Court in *Pickering v. Board of Education,* 391 U.S. 563, 568 (1968), addressed this issue and analyzed the competing interests involved when a public employee speaks out:

> [T]he State has interests as an employer in regulating the speech of its employees that differ significantly from those it possesses in connection with regulation of the speech of the citizenry in general. The problem in any case is to arrive at a balance between the interests of the [employee], as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees.

The burden of proof rests with Claimant to show that his conduct was constitutionally protected and that the conduct was the substantial or motivating factor in employer's decision to discharge him. If Claimant meets his burden, the burden of proof will then shift to Employer to show that it would have discharged him in the absence of the protected conduct. *Mt. Healthy City Board of Education v. Doyle,* 429 U.S.

274, 287 (1977). It is undisputed that Claimant's letter to Falcone was a substantial factor in the decision to dismiss him. Claimant has failed to prove, however, that his conduct was constitutionally protected.

In determining whether a statement is to be accorded First Amendment protection in a context such as the one before us, we must consider the nature of the concern addressed and the relationship between the employer and employee. *See Pickering v. Board of Education.* We find that Claimant's letter to Falcone does not address a matter of public concern and that his conduct resulted in a total disruption of the employer/employee relationship.

In his supplemental brief, Claimant argued that the letter did address issues of public concern—a public official's failure to provide adequate training for his staff, fiscal waste, false and malicious reprimands, and racial bias. Clearly, the letter addresses no such issues as far as the public is concerned. It is, instead, a personal statement by a government employee who feels that he has been treated unfairly. The letter demonstrates that Claimant took Falcone's prior criticism of him in a very personal manner and that he responded in like manner. Claimant even stated in the letter that "The purpose of this letter is constructed mainly to constitute a reprisal concerning your ruthless attacks upon my character as an employee of the City of Lancaster." The letter is purely personal and is not directed at an issue of public concern. It does not constitute constitutionally protected speech. *Cf., Pickering v. Board of Education* (teacher's criticism of fiscal policies of Board of Education held to be protected under First Amendment); *Pilkington v. Bevilacqua,* 439 F. Supp. 465 (D.R.I. 1977), *aff'd,* 590 F.2d 386 (1st Cir. 1979) (mental health administrator's criticism of policies detrimental to unit

he directed protected); *Wright v. Unemployment Compensation Board of Review,* 45 Pa. Commonwealth Ct. 117, 404 A.2d 792 (1979) (prison guard's criticism of prison board and warden after escaped prisoner killed police officer protected); *but cf., Roseman v. Indiana University of Pennsylvania, at Indiana,* 520 F.2d 1364 (3d Cir. 1975), *cert. denied,* 424 U.S. 921 (1976) (faculty member's questioning integrity of acting department chair before other members of administration and faculty not protected); *Bala v. Unemployment Compensation Board of Review,* 42 Pa. Commonwealth Ct. 487, 400 A.2d 1359 (1979) (hotel employee's note to hotel guest criticizing guest and presidential candidate's campaign not protected).

We also hold that Claimant's discharge was not an infringement on his right of free speech because his conduct interfered with the efficiency of the public service provided by the employer through its employees. It is true that criticism of a public employee such as Falcone is not *per se* detrimental to public service and it is also true that the fact that adverse criticism may have a detrimental impact on an individual administrator is not controlling on the issue of whether speech is protected. *Pilkington* at 473. Of course, speech is to be afforded no less protection when it is made privately rather than publicly. *Givhan v. Western Line Consolidated School District,* 439 U.S. 410, 415 n. 4 (1979); *Pilkington* at 474-75. Where, however, statements are made privately and are directed at an individual administrator or, as in this case, to an individual with copies to several other persons, the employer/employee relationship may be adversely affected. Such is the case here. In *Pickering,* the Court found that the teacher's letter was directed at the Board of Education, a body far enough removed from the teacher that there was no question

about maintaining discipline by the teacher's immediate superiors, harmony among his coworkers, or regular operations of the school generally. Additionally, there was no evidence that the subsequent Board/teacher relationship would impede the performance of his daily duties in the classroom. This Court reached a similar conclusion for similar reasons in *Wright v. Unemployment Compensation Board of Review.*

The case before us, however, is closer to the facts of *Sprague v. Fitzpatrick,* 546 F.2d 560 (3d Cir. 1976), *cert. denied,* 431 U.S. 937 (1977), and *Roseman v. Indiana University,* where employees questioned the integrity of their superiors. In both cases, the Courts found that the employees' conduct so seriously undermined the employment relationship that discharge of the employees was appropriate. We reach the same conclusion here. Claimant's letter consisted of nothing less than a personal written attack upon his immediate supervisor. Their relationship was less than perfect before Claimant's letter, but afterwards it was destroyed.

Since we have held that Claimant's letter resulting in his discharge was not protected speech under the First Amendment, we must determine whether the letter constituted willful misconduct rendering him ineligible for unemployment compensation benefits.

Willful misconduct is a question of law. *Unemployment Compensation Board of Review v. Tumolo,* at 267, 360 A.2d at 765. As we stated in our opinion in *Kentucky Fried Chicken of Altoona, Inc. v. Unemployment Compensation Board of Review,* 10 Pa. Commonwealth Ct. 90, 97, 309 A.2d 165, 168-69 (1973):

> For behavior to constitute wilful misconduct, it must evidence (1) the wanton and wilful disregard of the employer's interest, (2) the deliberate violation of rules, (3) the disregard of

standards of behavior which an employer can rightfully expect from his employe, or (4) negligence which manifests culpability, wrongful intent, evil design, or intentional and substantial disregard for the employer's interests or the employee's duties and obligations.

Insubordination and the use of abusive language directed at one's supervisor constitutes a disregard of the standards of behavior which an employer can rightfully expect from his employee. *Nesmith v. Unemployment Compensation Board of Review*, 43 Pa. Commonwealth Ct. 579, 581, 402 A.2d 1132, 1133 (1979). This standard accurately portrays Claimant's actions here.

Claimant relies on our decision in *Luketic v. Unemployment Compensation Board of Review*, 35 Pa. Commonwealth Ct. 361, 386 A.2d 1045 (1978), in arguing that since he did not use profanity or vulgarity in his letter it was not abusive or insubordinate. Claimant overlooks the fact that we also found Ms. Luketic's language to be *nonoffensive to the sensibilities* of those who heard her remarks. *Luketic* at 366, 386 A.2d at 1048. The same cannot be said about Claimant's letter. We find the facts of this case to be more closely aligned with those of *Argentina v. Unemployment Compensation Board of Review*, 29 Pa. Commonwealth Ct. 469, 371 A.2d 561 (1977). There, we found a Claimant's actions to constitute willful misconduct when he repeatedly made written complaints to the president of the savings and loan where he worked and threatened to send copies of such letters to the business' solicitors, brokers, and directors. Here, not only did Claimant send a written personal attack to his immediate supervisor but also sent copies of the letter to several other persons involved in the Lancaster city government. Such action is clearly willful misconduct.

Claimant next argues that even if his sending the letter to Falcone constituted willful misconduct, the Board's conclusion is in error because there was no consideration by the referee or the Board of the issue of good cause to justify the misconduct. The lack of findings of fact and conclusions of law on the issue of good cause are not fatal to the Board's decision here. The concept of good cause requires that an employee's actions be *justifiable or reasonable under the circumstances*. *Frumento v. Unemployment Compensation Board of Review*, 466 Pa. 81, 87, 351 A.2d 631, 634 (1976); *Graham v. Unemployment Compensation Board of Review*, 43 Pa. Commonwealth Ct. 336, 337-38, 402 A.2d 321, 322 (1979). Here, however, there is no indication on the record that Claimant's attack on Falcone was reasonable or justifiable under any circumstances. *See Lake v. Unemployment Compensation Board of Review*, 48 Pa. Commonwealth Ct. 138, 409 A.2d 126 (1979); *Graham v. Unemployment Compensation Board of Review*. The Board did not err in concluding that his conduct constituted willful misconduct.

Finally, Claimant argues that the referee's findings of fact adopted by the Board are insufficient to support a denial of benefits. We agree with the Claimant that finding of fact number two stating that he had received several prior warnings relating to his job performance was, without more, insufficient to support a conclusion of willful misconduct. *Endres v. Unemployment Compensation Board of Review*, 37 Pa. Commonwealth Ct. 567, 570, 391 A.2d 61, 62 (1978). We disagree, however, that finding of fact number three is insufficient to support the Board's conclusion. That finding, which states that

When the employer received a letter from the claimant in which claimant accused his immediate supervisor of outrageous attempt to ex-

ploit and undermine his character, of inaccurate and calculating underhanded tatics [sic] in his official relationship and that his supervisor's reprimands had been falsely and maliciously initiated, possibly due to racial overtones, claimant was dismissed[,] was adequate to support a finding of willful misconduct.

Because we have found none of Claimant's arguments to be meritorious, we affirm the order of the Board.

### ORDER

AND Now, this 7th day of May, 1980, the Order of the Unemployment Compensation Board of Review, Decision No. B-168711, dated February 1, 1979, is affirmed.