Harry T. EDMUNDSON, Appellant,

v.

BOROUGH OF KENNETT SQUARE; Robert F. Goddu; Kenneth Roberts; Herbert L. Waltz; Albert J. McCarthy, Appellees.

No. 92–1848.

United States Court of Appeals, Third Circuit.

Argued April 28, 1993.

Decided Aug. 10, 1993.

Sur Petition for Rehearing Sept. 23, 1993.

Jeffrey L. Pettit (argued), Richard E. Stabinski, Phillips & Phelan, Philadelphia, PA, for appellant.

Christine M. Brenner (argued), Robert G. Hanna, Marshall, Dennehey, Warner, Coleman & Goggin, Philadelphia, PA, for appellees.

Before: BECKER, HUTCHINSON, and WEIS, Circuit Judges.

## OPINION OF THE COURT

WEIS, Circuit Judge.

In this employment discharge case brought under 42 U.S.C. § 1983, we decide that an unemployment compensation proceeding reviewed by a state court invokes claim preclusion so as to bar recovery against a municipality and its officials in their governmental capacities. However, issue preclusion may not be applied to another administrative agency's unreviewed finding that plaintiff's public criticism of his superior officer was not protected by the First Amendment. Consequently, plaintiff's claim that he was discharged in retaliation for his exercise of free speech must yet be resolved against defendants in their personal capacities. We will affirm the district court's entry of summary judgment in part and reverse in part. 818 F.Supp. 798.

Plaintiff contends that he was wrongfully discharged from his position as a police officer for the Borough of Kennett Square, Pennsylvania. He alleges that the Borough and individual defendants, the mayor, members of the Borough Council, and the police chief in their official and personal capacities, dismissed him because of his adverse comments about the police chief.

Before his discharge in October, 1989, plaintiff had experienced several disciplinary problems with the department. In 1988, plaintiff was accused of breaking into the police chief's office and was suspended for one day. On March 1, 1989, and June 28, 1989, the Chester County Press published statements that plaintiff had made, including: "I was accused of [breaking into the police chief's office] at 11:00 p.m. at night, given a letter that I was going to be suspended and suspended that same night. So we have judge, jury and execution [sic] all in one shot." The article also quoted plaintiff as stating: "Out of all the amendments to the constitution, I feel that [the police chief] has at least bent most of them and just totally ignored the rest of them."

On July 10, 1989, the Borough suspended plaintiff for three days on the ground that he had violated the police department manual which lists "[p]ublicly criticizing the official action of a superior officer" as conduct unbecoming an officer. The Borough Civil Service Commission affirmed the suspension on September 28, 1989, and plaintiff appealed its ruling to the Court of Common Pleas. Because he did not actively prosecute the appeal, it was dismissed on March 2, 1993.

In July, 1989, plaintiff failed to make changes in a police report as directed by his superior and, in August of that year, he did not carry out the chief's order to accompany an inebriated man to the hospital. On October 2, 1989, acting on the mayor's recommendation, the Borough Council discharged plaintiff citing the preceding two incidents. After a hearing, the Civil Service Commission upheld the Council's action. Plaintiff appealed to the Court of Common Pleas, but later withdrew that appeal.

Plaintiff applied for and was denied unemployment compensation. The Pennsylvania Unemployment Compensation Board of Review found that the termination of his employment was justified because of his neglect of duty and failure to follow orders. The Commonwealth Court of Pennsylvania affirmed, concluding that plaintiff's actions amounted to willful misconduct.

After reviewing the various administrative and judicial proceedings in which plaintiff had been involved, the district court entered summary judgment. Invoking issue preclusion, the court ruled that plaintiff had been discharged for reasons other than exercising his rights of free speech when he criticized the police chief. The court also concluded that the result would be the same under claim preclusion because plaintiff did not raise his First Amendment contentions in the prior administrative and judicial proceedings. The Civil Service Commission's ruling on plaintiff's public criticism of the police chief, the court considered as equivalent to "a state ruling that the First Amendment did not protect Edmundson's assertions, the threshold issue in this case." The Commission specifically had held that "Officer Edmundson's statements and criticisms were more of

a personal charge by Officer Edmundson against the Chief and not a matter of general public concern and interest."

The district court also rejected plaintiff's contention that he had been denied due process because of the mayor's initial proposal that plaintiff either resign or face discharge by the Borough.

## I.

In previous opinions, we have reviewed the doctrines of claim preclusion and issue preclusion in somewhat similar cases involving employees discharged by Pennsylvania municipal authorities. *See, e.g., Bradley v. Pittsburgh Bd. of Educ.*, 913 F.2d 1064 (3d Cir.1990); *Gregory v. Chehi*, 843 F.2d 111 (3d Cir.1988). We need only summarize those defenses at this point.

■ Issue preclusion, otherwise known as collateral estoppel, bars re-litigation of an issue identical to that in a prior action. Claim preclusion, often called res judicata, is broader in effect and prohibits reexamination not only of matters actually decided in the prior case, but also those that the parties might have, but did not, assert in that action.

■ When a prior case has been adjudicated in a state court, federal courts are required by 28 U.S.C. § 1738 to give full faith and credit to the state judgment and, in section 1983 cases, apply the same preclusion rules as would the courts of that state. *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 85–87, 104 S.Ct. 892, 898–99, 79 L.Ed.2d 56 (1984) (claim preclusion); *Allen v. McCurry*, 449 U.S. 90, 95–105, 101 S.Ct. 411, 415–20, 66 L.Ed.2d 308 (1980) (issue preclusion). Decisions of state administrative agencies that have been reviewed by state courts are also given preclusive effect in federal courts. *Kremer v. Chemical Constr. Corp.*, 456 U.S. 461, 479–85, 102 S.Ct. 1883, 1896–99, 72 L.Ed.2d 262 (1982). However, in section 1983 cases, only state administrative factfinding is entitled to preclusive effect in the federal courts when the agency ruling remains unreviewed by state courts. *University of Tenn. v. Elliott*, 478 U.S. 788, 799, 106 S.Ct. 3220, 3226, 92 L.Ed.2d 635 (1986). *See infra* pp. 192–93.

■ In the case at hand, we must consider the effect of both reviewed and unreviewed state agency decisions, each involving different issues. With respect to both the Civil Service Commission's ruling on plaintiff's termination and that of the Unemployment Compensation Board which was reviewed by the Commonwealth Court, issue preclusion prevents reexamination of the fact that plaintiff was discharged because of prior infractions and because his failure to follow orders amounted to willful misconduct.

Thus, there are valid reasons under state law to justify plaintiff's discharge. That determination, however, does not necessarily mean that plaintiff was in fact discharged solely for these reasons. Assuming that plaintiff's criticism of the police chief was protected by the First Amendment, the question is whether the Borough would have terminated plaintiff's employment even in the absence of the challenged remarks. *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287, 97 S.Ct. 568, 576, 50 L.Ed.2d 471 (1977). This matter requires examination of two possibilities in terms of issue or claim preclusion—whether plaintiff's comments are protected by the First Amendment and whether they were the *sine qua non* of his discharge.

If these alternatives had been adjudicated by the Commonwealth Court or the Court of Common Pleas, issue preclusion would apply under both federal and Pennsylvania law. It is clear, however, that no such review occurred in any state court proceeding.

The only administrative ruling in this case which was reviewed by a state court was the unemployment compensation proceeding. Plaintiff did not raise his claim of retaliatory discharge or produce any evidence on that subject in the administrative proceeding, nor did he raise the point in his appeal to the Commonwealth Court.

Because plaintiff never raised the First Amendment defense, issue preclusion cannot be based on the unemployment compensation case. The question then arises whether claim preclusion is applicable to the judgment of the Commonwealth Court.

In reviewing unemployment compensation decisions, the Commonwealth Court has the authority to determine whether the agency adjudication violates the Constitution, is contrary to law, or is based on a finding of fact that is not supported by substantial evidence. 2 Pa.Cons.Stat. § 704; *see Hoffman v. Commonwealth, Unemployment Compensation Bd. of Review*, 524 Pa. 470, 574 A.2d 57, 60 (1990). That court has taken cognizance of constitutional issues in unemployment compensation cases when the exercise of First Amendment rights was asserted as a reason for discharge. In *Bala v. Commonwealth, Unemployment Compensation Board of Review*, 42 Pa.Cmwlth. 487, 400 A.2d 1359, 1362–69 (1979), the court discussed at some length the extent to which freedom of speech would furnish a defense to the employer's contention that the claimant had been properly discharged. The court said:

> "The symbiosis between the Commonwealth's interest in preserving the [unemployment compensation] fund and the employer's interest in discharging for willful misconduct any employee disregarding its rules, or failing to heed instructions after having been warned, permits us to analogize to cases addressing the issue of freedom of speech within the context of public employment...."

*Id.* 400 A.2d at 1369 (citations omitted).

In *Boyer v. Commonwealth, Unemployment Compensation Board of Review*, 51 Pa.Cmwlth. 191, 415 A.2d 425, 429 (1980), *rev'd on other grounds*, 499 Pa. 552, 454 A.2d 524 (1982), the Commonwealth Court addressed the procedure for asserting a First Amendment defense:

> "The burden of proof rests with Claimant to show that his conduct was constitutionally protected and that the conduct was the substantial or motivating factor in employer's decision to discharge him. If Claimant meets his burden, the burden of proof will then shift to Employer to show that it would have discharged him in the absence of the protected conduct. *Mt. Healthy City Board of Education v. Doyle*, 429 U.S. 274, 287, 97 S.Ct. 568, 576, 50 L.Ed.2d 471 (1977)."

On allocatur, the Pennsylvania Supreme Court reviewed the record and found that the employee's conduct was reasonable. *Boyer,* 454 A.2d at 527.

It appears, therefore, that on appeal from the actions of the Unemployment Compensation Board, the Commonwealth Court has the competence to adjudicate, and has in fact decided, claims of First Amendment protection in employment discharge cases.

■ One of the prerequisites to invoking claim preclusion is that the same individuals or their privies are parties to the litigation. *Stevenson v. Silverman,* 417 Pa. 187, 208 A.2d 786, 787–88 (1965). In this case, the employer—the Borough of Kennett Square— is treated as a party to the compensation proceeding by virtue of state law. The *Bala* court cited the "symbiotic" relationship between the Fund and the employer that underlies their common interest in contesting the employee's claim and overcoming his objections to a denial of compensation. 400 A.2d at 1369.

Pennsylvania's Unemployment Compensation Law requires an employer to make "contributions" on wages paid by it which are then credited to a reserve account in the employer's name. 43 Pa.Stat. § 781. All benefits paid to former employees are charged to that account. However, no charge is made if it is determined that the claimant was discharged for willful misconduct. *Id.* § 782(a)(1). An employer's reserve account balance is a factor in determining the appropriate rate of the employer's contribution for subsequent years. *Id.* § 781.1. Thus, the employer has a significant financial interest in the outcome of the unemployment compensation cases brought by its employees.

Consistent with these provisions, notice must be given to an employer of the initial decision to grant or deny benefits to a claimant. *Id.* § 822; *see Osborne v. Commonwealth, Unemployment Compensation Bd. of Review*, 65 Pa.Cmwlth. 378, 442 A.2d 414, 416 (1982); *Lentz v. Commonwealth, Unemployment Compensation Bd. of Review*, 43 Pa. Cmwlth. 544, 402 A.2d 1127, 1129 (1979) (employer who received notice, but did not appeal, could not collaterally attack the refer-

ee's decision.). Moreover, an employer has a right to appeal and to participate in the compensation hearing. 43 Pa.Cons.Stat. § 822.

Identity of parties' interests having been established, we believe that Pennsylvania would apply claim preclusion to the Commonwealth Court decision in the case at hand. Consequently, the federal courts must do the same.[1] Because the plaintiff could have but did not raise the First Amendment defense in the compensation case, and did not preserve it for federal court adjudication, *see Bradley*, 913 F.2d at 1071, he is precluded from asserting that ground in the present case. *See Duquesne Light Co. v. Pittsburgh Rys.*, 413 Pa. 1, 194 A.2d 319, 321 (1963) (a "final determination by a court of competent jurisdiction settles not only the defenses actually raised, but also those which might have been raised"); *see also Day v. Volkswagenwerk Aktiengesellschaft*, 318 Pa.Super. 225, 464 A.2d 1313, 1318 (1983); *Jost v. Phoenixville Area Sch. Dist.*, 119 Pa.Cmwlth. 477, 547 A.2d 830, 833 (1988). Consequently, the district court properly entered judgment in favor of the Borough and the individual defendants in their official capacities.

Application of claim preclusion does not end the case however. The municipality had the status of a party and, hence, claim preclusion is applicable to the Borough in the federal suit. Because the claims against the mayor, councilmen, and police chief in their official capacities are, in effect, against the Borough itself, those individuals in that capacity are also entitled to invoke claim preclusion. *See Gregory*, 843 F.2d at 120 (governmental officials sued in their official capacities considered in privity with the governmental body). That defense, however, does not avail the individuals in their personal as contrasted with their governmental capacities. *Id.* at 121.

The Commonwealth Court judgment makes any discussion of claim preclusion in connection with the Civil Service Commission proceedings redundant. However, we must consider issue preclusion as it might be invoked by defendants in their individual capacities as a result of the Civil Service adjudications in which plaintiff was a party, but the individual defendants were not.

The appeals to the Common Pleas Court from the Civil Service rulings were either abandoned or dismissed for lack of prosecution. Thus, issue preclusion would not apply to those court proceedings as such because the court did not reach the merits. *Al–Khazraji v. Saint Francis College*, 784 F.2d 505, 509 (3d Cir.1986), *aff'd.*, 481 U.S. 604, 107 S.Ct. 2022, 95 L.Ed.2d 582 (1987).

We come then to the effect to be given to the various unreviewed Civil Service proceedings. As noted earlier, in section 1983 cases, in the absence of state court review, federal courts must give the same preclusive effect to the factfinding of administrative agencies as would the state courts.

The Civil Service Commission's ruling on plaintiff's discharge did not discuss whether the asserted protected conduct had a determinative effect on the Borough's decision. The Commission did take cognizance of three suspensions previously meted out to plaintiff (one of which was connected with plaintiff's criticism of the police chief), but did not consider, or even speculate about, whether plaintiff would have been discharged had he not violated the police manual by making public statements. Therefore, that proceeding does not give rise to issue preclusion on the *Mt. Healthy* criterion—the core of this case as the district court acknowledged.

We must also consider, however, the Commission's earlier adjudication that the Borough was justified in suspending plaintiff for three days because of his adverse comments about the police chief. In the course of its decision, the Commission found that plaintiff had made the statements and that they were expressed without prior authority or permis-

---

1. The panel in *Kelley v. TYK Refractories Co.*, 860 F.2d 1188, 1192 n. 7 (3d Cir.1988), found that because allegations of racial discrimination were not a necessary element of an unemployment compensation claim under Pennsylvania law, claim preclusion did not apply to an unemployment compensation proceeding. That case is distinguishable because the exercise of First Amendment rights has been recognized as a valid defense to discharge by the Pennsylvania Commonwealth Court. *See Bala*, 400 A.2d at 1361.

sion. The Commission concluded that the comments were designed to ridicule the chief and were detrimental to the image of the police department. The Commission characterized the statements as "likely [to] undermine the effectiveness of the Department and interfere with the close working relationship between superiors and employees." In conclusion, citing an earlier ruling, the Commission found that the police manual restrictions were constitutional and had been violated by plaintiff.

The extent to which issue preclusion rules apply to unreviewed state administrative agency decisions is an unsettled area of the law. It is clear enough that when Congress has indicated that agency factual findings are not conclusive, as in the instances of Title VII, *Elliott,* 478 U.S. at 795–96, 106 S.Ct. at 3224–25, and the Age Discrimination Act, *Astoria Fed. Sav. & Loan Ass'n v. Solimino,* — U.S. —, — – —, 111 S.Ct. 2166, 2172–73, 115 L.Ed.2d 96 (1991), issue preclusion may not be based on unreviewed administrative decisions. As *Elliott* reiterated, however, no such congressional prohibition, express or implied, applies to section 1983 cases. 478 U.S. at 797, 106 S.Ct. at 3225. Therefore, issue preclusion is applicable to factual findings to the same extent that it would be invoked by state courts.

*Elliott* was quite specific, however, in referring consistently throughout the opinion to administrative or agency "factfinding." *Astoria* was less specific in stating that the repose resulting from claim and issue preclusion is desirable when "a court has resolved an issue, and should do so equally when the issue has been decided by an administrative agency, be it state or federal, *see University of Tennessee v. Elliott,* 478 U.S. 788, 798, 106 S.Ct. 3220, 3225–26, 92 L.Ed.2d 635 (1986), which acts in a judicial capacity." — U.S.

at ——, 111 S.Ct. at 2169. *Astoria,* however, went on to say: "Although administrative estoppel is favored as a matter of general policy, its suitability may vary according to the specific context of the rights at stake, the power of the agency, and the relative adequacy of agency procedures." *Id.* — U.S. at ——, 111 S.Ct. at 2170.

Based on the record here, we assume that the Borough Civil Service Commission acting in a judicial capacity, gave plaintiff ample opportunity to present his views and to cross-examine the witnesses against him.[2] He had the requisite "full and fair" hearing. *See Elliott,* 478 U.S. at 797–99, 106 S.Ct. at 3225–26; *Gregory,* 843 F.2d at 121. The factual findings are clear enough and would be effective for purposes of issue preclusion. It is the legal issue, the Commission's constitutional ruling, that we think is beyond the scope of *Elliott*'s holding.

The Pennsylvania Borough Code provides that the Council shall appoint a Civil Service Commission consisting of three commissioners who must be qualified electors of the Borough. 53 Pa.Stat. § 46172. There is no requirement that the commissioners be learned in the law or have any knowledge of constitutional principles.[3]

We see a profound difference in the ability of a Commission composed of lay citizens to resolve matters of credibility and fact—e.g., whether plaintiff actually made the statements in the circumstances alleged despite his denials—and the ability to determine the more complex question of whether the statements are constitutionally protected in accordance with the considerations articulated in *Connick v. Myers,* 461 U.S. 138, 142, 103 S.Ct. 1684, 1687, 75 L.Ed.2d 708 (1983), and *Pickering v. Board of Education,* 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968).

---

**2.** We are aware of, but need not review here, the many facets of the issue preclusion doctrine that may enter into the determination of whether it applies in a particular case. *See, e.g., Roth v. Koppers Indus.,* 993 F.2d 1058, 1060–63 (3d Cir. 1993); *Valenti v. Mitchell,* 962 F.2d 288, 297–98 (3d Cir.1992); *Arab Afr. Int'l Bank v. Epstein,* 958 F.2d 532, 534–37 (3d Cir.1992); *Ivy Club v. Edwards,* 943 F.2d 270, 280 (3d Cir.1991); *Bradley,* 913 F.2d at 1073–76; *Kelley,* 860 F.2d at 1192–98; *Gregory,* 843 F.2d at 121; *New Jersey-*

*Phila. Presbytery of Bible Presbyterian Church v. New Jersey State Bd. of Higher Educ.,* 654 F.2d 868, 876–77 (3d Cir.1981); *see generally* 18 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 4471 (1981).

**3.** We are aware that at least one of the commissioners of the Kennett Square Borough Commission was a lawyer, but this was a fortuitous event and not one required by statute.

*See Johnson v. Lincoln Univ. of Commonwealth Sys. of Higher Educ.,* 776 F.2d 443, 452–54 (3d Cir.1985). We intimate no disrespect for the Commission in stating that constitutional adjudication is not within its competence so as to bar a federal court from re-examining that legal issue. The Commission simply does not have the background or experience to finally decide issues that give pause even to federal courts despite their familiarity with that area of the law. *See Plano v. Baker,* 504 F.2d 595, 599 (2d Cir. 1974).

As we have indicated, the question of whether federal courts should grant preclusive effect to judicially unreviewed agency rulings on questions of law is an open one in this Court. Other Courts of Appeals have taken varying approaches to the issue. *Eilrich v. Remas,* 839 F.2d 630, 634 n. 2 (9th Cir.1988), concluded that unreviewed agency determinations on issues of law, as well as fact, are entitled to preclusive effect. The *Remas* Court overlooked *Elliott*'s distinction between issues of law and fact, but instead based its conclusion on the fact that no distinction between the two was made for preclusion purposes either in the Restatement (Second) of Judgments § 27 (1982) or under California law. We are not persuaded by the *Remas* opinion in view of *Elliot*'s careful use of the word "factfinding" for preclusion purposes. We do, however, find ourselves in agreement with the Court of Appeals for the Eighth Circuit in *Peery v. Brakke,* 826 F.2d 740, 746 (8th Cir.1987), and the comments expressed in *Gjellum v. City of Birmingham,* 829 F.2d 1056, 1064–65 & n. 21 (11th Cir. 1987), where those Courts limited preclusive effect to unreviewed agency factfinding and declined to extend it to legal issues. *See also* Restatement (Second) of Judgments § 28(2)–(3) (1982).

As noted earlier, we do not think that an administrative agency consisting of lay persons has the expertise to issue binding pronouncements in the area of federal constitutional law. Our determination not to grant the Commission's ruling preclusive effect is based on the considerations listed in *Astoria*—the rights at stake, as well as the power and relative adequacy of state procedures in this highly specialized area. —— U.S. at

——, 111 S.Ct. at 2170; *see also Gjellum,* 829 F.2d at 1064 (court must consider importance of federal rights and the "limited ability of the state forum to function as final adjudicator" in deciding if preclusion is appropriate); *cf. Haring v. Prosise,* 462 U.S. 306, 314, 103 S.Ct. 2368, 2373, 76 L.Ed.2d 595 (1983) (in section 1983 actions, "federal courts could step in where the state courts were unable or unwilling to protect federal rights"). *But see Nelson v. Jefferson County,* 863 F.2d 18, 19–20 (6th Cir.1988).

We conclude that the district court should not have given issue preclusive effect to the ruling of the Civil Service Commission that pertained to the First Amendment. Accordingly, the summary judgment in favor of the individual defendants in their personal capacities will be reversed.

## II.

■ Plaintiff also complains that he was denied due process because he was terminated without a sufficient hearing as required by *Cleveland Board of Education v. Loudermill,* 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985). In that case, the Supreme Court held that a public employee with a property interest in his job is entitled to "some kind of a hearing," a "pretermination opportunity to respond, coupled with post-termination administrative procedures." *Id.* at 542, 547–48, 105 S.Ct. at 1493, 1496. The hearing need not be elaborate, but the employee is entitled to notice of the charges, an explanation of the employer's evidence, and an opportunity to explain. *Id.* at 546, 105 S.Ct. at 1495. The notice may be served at the time of the pretermination hearing, *Gniotek v. City of Phila.,* 808 F.2d 241, 244 (3d Cir.1986), and it may be oral, *Copeland v. Philadelphia Police Dep't,* 840 F.2d 1139, 1145 (3d Cir.1988).

The record in this case establishes that plaintiff was called to a meeting attended by the mayor and two members of the Borough Council. The mayor reviewed problems with plaintiff's performance as a patrolman, including previous suspensions for various infractions. When plaintiff asked the charges justifying his dismissal, the mayor cited plaintiff's failure to follow orders to correct a crime report and, on another occasion, his failure to accompany an intoxicated individual to the hospital. The Council President

offered plaintiff the opportunity to resign before the Council would take action.

In an attempt to justify his past conduct, plaintiff at that point contended that one of the orders given him was wrong. The mayor responded that he did not wish to argue each point with plaintiff and then repeated the option offered by the Council. Plaintiff went on to say that he liked police work, that he always followed police procedures even when it wasn't popular to do so, and that the chief had been wanting to fire him. After several other discussions, the meeting adjourned. Plaintiff requested and received a copy of the minutes of that meeting before the Council terminated his employment at its session on October 2, 1989.

The minutes of the meeting establish that plaintiff was given oral notice of the charges against him and that, on several occasions, he protested being terminated. Although the mayor indicated some impatience with the explanation, we cannot say that plaintiff did not have an adequate opportunity to respond. Indeed, the minutes do not indicate that plaintiff was cowed or prevented from presenting a defense by the mayor's impatience. In the circumstances presented here, we believe that the pretermination hearing complied with due process. We note further that plaintiff was given an adequate post-termination hearing by the Civil Service Commission and that he has no complaints with that procedure.

The judgment in favor of the Borough and defendants in their official capacities will be affirmed. The judgment in favor of defendants in their individual capacities will be reversed and the case remanded for further proceedings consistent with this opinion.

BECKER, Circuit Judge, concurring in part and dissenting in part.

While I join in Part I of the majority opinion, I cannot agree with the conclusion in Part II that the plaintiff was afforded due process in connection with his pre-termination hearing.

The Supreme Court has held that the Due Process Clause entitles a public employee to a pre-termination hearing. *See Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542–43, 105 S.Ct. 1487, 1493–94, 84 L.Ed.2d 494 (1985). Although the Court has made it clear that the hearing need not be elaborate and, in fact, may be quite informal, it has identified notice to the employee and an opportunity to be heard as the two essential elements of a constitutionally adequate pre-termination hearing. *See id.* at 545–46, 105 S.Ct. at 1495. While Edmundson's pre-termination hearing afforded him adequate notice of his discharge and the ostensible reasons for it, in my view it failed to provide him a sufficient opportunity to be heard.

The pre-termination hearing consisted of a meeting among: Edmundson; Kennett Square's mayor, Robert Goddu; Kennett Square's Borough Council President, Kenneth Roberts; and Kennett Square Councilmember, Herbert Waltz. At this meeting, Mayor Goddu explained to Edmundson why there was dissatisfaction with Edmundson's performance as a police officer—i.e., his failure to follow orders and his failure to follow police procedures regarding accompanying an arrestee to the hospital. Borough Council President Roberts explained to Edmundson that he had the "option" of resigning or else being fired by the municipality. In other words, Edmundson was given an ultimatum in the nature of a Hobson's choice. When Edmundson tried to explain the reasons for his performance and his alleged departure from police procedures, he was interrupted by Mayor Goddu, who informed him that he "didn't wish to argue each point" with him. Finally, at the conclusion of the hearing, Roberts again advised Edmundson of his option to resign or have his employment terminated by action of the council.

It is, to say the least, troubling that Edmundson was given an ultimatum of resigning or waiting to be fired, which strongly suggests that the decisionmakers at his pre-termination hearing had already made up their minds regarding his discharge. More importantly, Edmundson was not afforded his constitutionally-mandated opportunity to be heard because he was interrupted when he attempted to explain the reasons for his actions as a police officer. The Court has made it clear that an opportunity to be heard consists of a chance for an employee to "present his side of the story," *see id.* at 546, 105 S.Ct. at 1495, which is precisely what Mayor Goddu prevented by interrupting Ed-

mundson and informing him that he was not interested in hearing his explanation. Under these circumstances, I would hold that Edmundson was not given an adequate opportunity to be heard in contravention of his due process rights. I thus respectfully dissent from Part II of the majority opinion.

SUR PETITION FOR REHEARING

Sept. 23, 1993.

Present SLOVITER, Chief Judge, BECKER, STAPLETON, MANSMANN, GREENBERG, HUTCHINSON, SCIRICA, COWEN, NYGAARD, ALITO, ROTH, LEWIS and WEIS,* Circuit Judges.

The petition for rehearing filed by appellees in the above captioned matter having been submitted to the judges who participated in the decision of this court and to all the other available circuit judges of the circuit in regular active service, and no judge who concurred in the decision having asked for rehearing, and a majority of the circuit judges of the circuit in regular active service not having voted for rehearing by the court in banc, the petition for rehearing is denied.