634 A.2d 738

**GOODWILL INDUSTRIES, Petitioner,**

v.

**UNEMPLOYMENT COMPENSATION BOARD OF REVIEW, Respondent.**

Commonwealth Court of Pennsylvania.

Argued Oct. 6, 1993.

Decided Nov. 23, 1993.

148

Barbara B. May, for petitioner.

Maribeth Wilt–Seibert, for respondent.

Before CRAIG, President Judge, and DOYLE, COLINS, PALLADINO, McGINLEY, SMITH and KELLEY, JJ.

McGINLEY, Judge.

Goodwill Industries (Employer) appeals from the September 29, 1992, order of the Unemployment Compensation Board of Review (Board) reversing a referee's decision that Ervin L. McIntyre (Claimant) was ineligible for benefits because he was discharged from employment for willful misconduct under Section 402(e) of the Unemployment Compensation Law (Law).[1] We reverse.

█ The issue before us is whether the Board erred in holding that Claimant's off-duty distribution of approximately 500 leaflets containing negative statements about Employer did not constitute willful misconduct. Our scope of review is limited to determining whether constitutional rights were violated, whether an error of law was committed or whether all necessary findings of fact are supported by substantial evidence. *Moonlight Mushrooms, Inc. v. Unemployment Compensation Board of Review,* 142 Pa.Commonwealth Ct. 153, 158, 596 A.2d 1264, 1266 (1991).

█ A willful misconduct determination is a question of law subject to our review. *Simmons v. Unemployment Compensation Board of Review,* 129 Pa.Commonwealth Ct. 315, 565 A.2d 829 (1989), *aff'd* 528 Pa. 590, 599 A.2d 646 (1991).

1. Act of December 5, 1936, Second Ex.Sess., P.L. (1937) 2897, *as amended,* 43 P.S. § 802(e). This section provides in part that "[a]n employee shall be ineligible for compensation for any week ... [i]n which his unemployment is due to his discharge for willful misconduct connected with his work."

Evidence of one of the following is necessary for a finding of willful misconduct:

(1) wanton and willful disregard of an employer's interest, (2) a deliberate violation of the employer's rules, (3) a disregard of expected standards of behavior which an employer may rightfully expect from an employee, or (4) negligence which manifests culpability, wrongful intent, evil design, or intentional and substantial disregard for an employer's interest or an employee's duties or obligations.

*Alexander v. Unemployment Compensation Board of Review,* 138 Pa.Commonwealth Ct. 647, 650, 588 A.2d 1341, 1342 (1991).

In its September 29, 1992, Decision and Order, the Board made the following findings of fact:

1. Claimant was last employed as a truck helper and occasional driver by Goodwill Industries for approximately three years at a final rate of $5.72 per hour and his last day of work was January 27, 1992.

2. Claimant was dissatisfied with certain procedures the employer utilized in the conduct of its business.

3. Claimant attempted to address his concerns with the employer at various times.

4. On Saturday, January 25, 1992, while off duty, claimant composed approximately 500 flyers stating his opinion in the form of questions.[2]

**2.** The flyer read as follows:
Goodwill Industries of Lancaster

Do you know who you are buying or giving to?
Do you know Goodwill gives nothing to the poor?
Do you know many of your donation [sic] of clothing are baled up and sold as rags, when they get to [sic] many to handle, which happens a lot?
Do you know many donations are left out side [sic] over the weekend in bad weather?
Do you know when you give food they throw it in the trash?
Do you know most Black workers who worked in the Transportation Dept. have filed complaints of discrimination?
Do you know Hispanics [sic] workers have been fired for stealing, while white workers have stold [sic] all they want?
A Concerned Worker of Goodwill

R.R. 69a.

5. Employer, on Monday, January 27, 1992, discovered that claimant had distributed the flyers and confronted claimant.

6. During the meeting, the employer advised claimant that he was being discharged for distributing misleading information to the public without the employer having an opportunity to defend itself.

(Footnote added).

▮ Employer contends that the Board erred in reversing the referee's determination of willful misconduct because Claimant wantonly and wilfully disregarded not only Employer's interests, but also disregarded the standard of behavior rightfully expected of him by: (1) refusing to participate in an established grievance procedure; and (2) presenting misleading information directly to the public without affording Employer an opportunity to address Claimant's concerns.

In *Kelley v. Unemployment Compensation Board of Review*, 78 Pa.Commonwealth Ct. 136, 466 A.2d 1143 (1983), we reviewed another instance where employees addressed their business-related concerns to company outsiders. In *Kelley* the issue was "whether the claimants, by publishing their complaints to persons outside the company in ways which could materially jeopardize their employer's financial and reputational interests, breached standards of behavior which their employer could reasonably expect...." *Id.* at 141, 466 A.2d at 1146. In *Kelley*, weekend supervisors at a group-home for mentally-retarded persons distributed a letter regarding the alleged inadequacy of patient care to *interested* company outsiders.[3]

Because the employees in *Kelley* attempted to resolve their concerns internally, sent their letter to "only persons who had some official or legal interest in the conditions they reported," and did not have motives tainted by malice or indifference, we

---

3. The claimants sent their letter to the Montgomery County agency responsible for placing mentally retarded persons, the Special Master in a federal court action involving mentally retarded issues, counsel for the Association of Retarded Citizens and the legal guardians of one of the group-home residents.

concluded that the Board erred in finding willful misconduct. Guided by our state Supreme Court's decision in *Boyer v. Unemployment Compensation Board of Review,* 499 Pa. 552, 454 A.2d 524 (1982),[4] we noted that "[e]ach case of this type must be weighed on its own facts to determine whether, in light of his responsibility of loyalty to his employer, the employee acted justifiably and reasonably." *Kelley,* 78 Pa.Commonwealth Ct. at 143–44, 466 A.2d at 1147.

Applying the balancing test established in *Boyer* and *Kelley* to the facts of the present case, we conclude that Claimant did not act in a justifiable or reasonable manner and that his actions amounted to willful misconduct in disregard of Employer's interests. First, contrary to the Board's finding in F.F. No. 3 that, "Claimant attempted to address his concerns with the employer at various times," the record indicates that Claimant had scheduled a meeting with Rick Moser, Employer's executive supervisor, to discuss his concerns:

EL [Employer's Counsel]: Mr. McIntyre, you indicated that you tried to talk to a number of people at work [concerning the allegations in the leaflets], unsuccessful at doing that.

C: Yes.

EL: Isn't it true that you had a scheduled meeting with Mr. Moser, which you failed to keep?

C: Yes, and I just said why I didn't keep it with Rick. Because when I went to Moser the first time to speak to him, the way that he hollered at me, and told me that I don't have time to speak to you, and I'd get back with you, I decided that I would pass speaking to him, and wait for the transportation meeting with Ron.

4. In *Boyer* the Court noted with respect to the reasonableness of the employee's actions: (1) the employee's good faith belief that his supervisor's criticisms were unjustified, and possibly motivated by racial animus; (2) the employee's efforts to resolve the problem by means of discussions with his supervisor and the personnel manager of his department; and (3) *the fact that he sent copies of the letter to only those persons who had received copies of his supervisor's memos. Kelley,* 78 Pa.Commonwealth Ct. at 142, 466 A.2d 1143 (citing *Boyer,* 499 Pa. at 558, 454 A.2d at 525–27).

EL: Even though he scheduled a time for you to meet with him?

C: Yes.

Certified Record, Item No. 7; Notes of Testimony (N.T.), March 24, 1992, at 9–10. As indicated, Claimant was afforded an opportunity on or about January 20, 1992, to meet with Rick Moser, Employer's executive supervisor, and discuss his problems with the company's policies. Instead, Claimant chose not to meet and discuss his concerns with Mr. Moser or Mr. Moser's superiors and proceeded to distribute his leaflets to the public on January 25–26, 1992. In view of this, we conclude that even though Claimant may have *attempted* to speak to several people, Claimant *was afforded an opportunity* to adequately pursue his concerns within the framework of Employer's grievance procedures before disseminating his written allegations, but failed to do so. As a result, we hold that Claimant acted in disregard of Employer's interests.

Second, instead of first distributing his written allegations to company officials or other individuals who possessed a direct or legal interest in the conditions reported, Claimant distributed 500 leaflets to the general public at a large Lancaster mall and food store. Such conduct indicates that Claimant was, at best, indifferent to Employer's interests. Having determined that the factual situation in the controversy *sub judice* is distinguishable from that in either *Boyer* or *Kelley,* we hold that the Board erred in not finding that Claimant's discharge was based on willful misconduct.

■ For the first time on appeal before this Court, the Board contends that Claimant was exercising his First Amendment right to freedom of speech and thus cannot be denied benefits under Section 402(e) on the ground of willful misconduct. In *Gateway School District v. Department of Education,* 126 Pa.Commonwealth Ct. 256, 559 A.2d 118 (1989), we noted:

On appeal from a final order of an administrative agency, a reviewing court may address only those issues which were raised in exceptions to the agency. *Anthony Iron & Metal*

*Co. v. Department of Transportation,* 109 Pa.Common-wealth Ct. 347, 531 A.2d 90 (1987).

Notwithstanding this general limitation, a reviewing court may consider questions involving the validity of a statute, questions involving subject matter jurisdiction, and questions which the court is satisfied could not, by the exercise of due diligence, have been raised before the government agency. Pa.R.A.P. 1551; . . . .

*Id.* 126 Pa.Cmwlth. at 260–61, 559 A.2d at 120.

In the present case, our review of the record indicates that Claimant did not raise a First Amendment argument before either the referee or the Board, and the Board did not review the allegation that Claimant was exercising his First Amendment rights in its September 29, 1992, decision. We also note that the Claimant did not challenge the validity of Section 402(e) of the Law or argue that it is *prima facie* unconstitutional. Rather, the Board contends that its decision may be affirmed, because under the facts of this case, a denial of benefits under Section 402(e) violates Claimant's First Amendment right to freedom of speech. However, no reason has been offered why this issue was not, with the exercise of due diligence, raised by Claimant before the Board. Accordingly, we conclude that this issue has been waived.

The order of the Board is reversed.

### ORDER

AND NOW, this 23rd day of November, 1993, the order of the Unemployment Compensation Board of Review in the above-captioned matter is reversed.

PALLADINO, J., concurs in the result only.

KELLEY, J., dissents.

SMITH, Judge, concurring and dissenting.

I concur in the Majority's decision to deny consideration of the First Amendment argument presented for the first time in the appeal before this Court. However, I dissent from a

reversal of the Unemployment Compensation Board of Review's decision to grant benefits to Claimant.

Since no constitutional issues are before the Court, the scope of review in this matter is limited to determining whether an error of law was committed or whether the Board's findings of fact are supported by substantial evidence. Because the Board is the ultimate factfinder with the power to substitute its judgment for that of the referee on disputed facts, *Peak v. Unemployment Compensation Board of Review,* 509 Pa. 267, 501 A.2d 1383 (1985), matters of credibility and evidentiary conflicts are within the Board's discretion and are not subject to judicial re-evaluation by this Court if supported by substantial evidence. *See also Bethenergy Mines, Inc. v. Worker's Compensation Appeal Board,* 531 Pa. 287, 612 A.2d 434 (1992). The Majority has reached beyond this Court's scope of review to arrive at its decision to reverse the Board.

The Board resolved credibility and evidentiary conflicts in favor of Claimant, finding that Claimant attempted to address his concerns with Goodwill Industries at various times and that he was discharged for distributing misleading information to the public without giving Goodwill an opportunity to defend itself. The testimony demonstrated that Claimant attempted to discuss his employment concerns with his supervisor, Mr. Moser, who yelled at Claimant and stated he didn't have time to discuss Claimant's concerns. Claimant also attempted to discuss his concerns with the personnel director, Ms. Yeager; the executive supervisor, Mr. Arnold; and with Mr. Kratofil, president of Goodwill. Claimant did not attend another meeting with Mr. Moser because of his earlier conduct toward Claimant. Because Claimant believed that none of these individuals were interested in his concerns, he felt that going public was his only other route and before doing so, reviewed the company's rules book to verify that his going public would not violate company rules which would result in his termination.

The Majority nevertheless finds its own facts, irrespective of the Board's findings to the contrary, that Claimant was afforded an opportunity to adequately pursue his concerns

within the framework of Goodwill's grievance procedures before distributing his leaflets. There is no substantial evidence in the record to support the Majority's findings of fact even if this Court in its appellate role were legally permitted to engage in its own factfinding. In addition, the existence of grievance procedures is irrelevant to the inquiry since no disciplinary action was pending against Claimant which required him to invoke company grievance procedures. *See Boyer v. Unemployment Compensation Board of Review*, 499 Pa. 552, 454 A.2d 524 (1982); *Kelley v. Unemployment Compensation Board of Review*, 78 Pa.Commonwealth Ct. 136, 466 A.2d 1143 (1983). Moreover, the Board noted that Claimant had no duty to offer Goodwill an opportunity to rebut Claimant's charges, although he did in fact provide such an opportunity.

Although Goodwill may discharge Claimant for the reason alleged or for absolutely no reason, Goodwill cannot foreclose Claimant's entitlement to benefits where his actions did not constitute willful misconduct in connection with his work. Testimony believed by the Board demonstrates that Claimant acted without malice or indifference toward his employer, *Groskin v. Unemployment Compensation Board of Review*, 103 Pa.Commonwealth Ct. 138, 519 A.2d 1098 (1987) (quoting *Kelley* ); and because the record contains substantial evidence to support the Board's findings, its determination that Claimant's acts did not rise to the level of willful misconduct must be sustained by this Court. Any decision to the contrary by the Majority represents an expansion of this Court's scope of review.[1]

1. Although Claimant may have taken other avenues through local and/or state administrative agencies to challenge what he believed, among other things, to be Goodwill's discriminatory policies, the fact remains that the Board did not find Claimant's behavior fits within the definition of willful misconduct articulated many times by this Court. *See Boyer* (employee circulation of written reply to supervisor's critical memos where no attempt by personnel manager to resolve employee complaints held insufficient basis for willful misconduct determination); *Kelley* (distribution of letter by employee challenging patient-care conditions of employer held insufficient basis for willful misconduct determination); and *Groskin* (case remanded to determine whether tele-

phone calls to co-workers about resident abuse charges were for improper purpose or an effort to comply with the law).