**BEVERLY ENTERPRISES,
INC., Petitioner,**

v.

**UNEMPLOYMENT COMPENSATION
BOARD OF REVIEW,
Respondent.**

Commonwealth Court of Pennsylvania.

Argued Sept. 12, 1997.
Decided Nov. 24, 1997.

Bruce D. Bagley, Harrisburg, for petitioner.

Maribeth Wilt–Seibert, Asst. Counsel, Harrisburg, for respondent.

Before SMITH and FRIEDMAN, JJ., and MIRARCHI, Jr., Senior Judge.

SMITH, Judge.

Beverly Enterprises, Inc. (Beverly) petitions for review of the order of the Unemployment Compensation Board of Review

(Board) that affirmed the order of the Referee who granted Claimant Sharon Dragovich and other former Beverly employees (collectively, Claimants) unemployment compensation benefits. In its petition, Beverly states that the Board erred by concluding that Claimants were not ineligible for benefits due to their willful misconduct and by determining that a lockout, rather than a strike, caused the work stoppage at fifteen of Beverly's nursing home facilities in Pennsylvania. Beverly also argues that the matter sub judice is preempted by federal law. The Board's order is affirmed based upon the following reasoning.

## I

Claimants worked at nursing homes operated by Beverly throughout Pennsylvania. For each nursing home, Beverly had a separate collective bargaining agreement (CBA) with one of the three local unions that represented the bargaining unit employees, and all of these CBAs expired on November 30, 1995, with no new agreements reached despite negotiations. Beverly sought a written extension of the expired CBAs, but the unions refused; nonetheless, the unions and Beverly agreed to operate under the status quo while negotiations continued. A major issue in the negotiations was a demand by Claimants for one master labor management agreement instead of a separate contract for each facility.

On December 7, 1995, Beverly informed each of its facilities that it would not adhere to certain terms of the expired CBAs, including, among other things, provisions allowing for the deduction of union dues from employees' paychecks and making arbitration a part of Beverly's internal grievance procedure. The unions protested Beverly's unilateral changes and filed complaints with the National Labor Relations Board (NLRB) and with Beverly, alleging unfair labor practices in violation of federal law; these claims were pending when the Referee issued the decision in the case.

An impasse in negotiations developed in subsequent months, and, on March 14, 1996, the unions informed Beverly in writing that a work stoppage would commence on March 29, 1996. The next day, Beverly warned its union-member employees that they would be replaced if a strike occurred; Beverly also placed advertisements in newspapers for permanent replacement workers. On March 27, 1996, the unions offered a concession in their negotiating position and withdrew their demand for one master labor management agreement to cover all twenty of Beverly's facilities; Beverly refused the offer.

Following Beverly's refusal, the unions notified Beverly in writing that the planned stoppage would not begin until April 1, 1996 and that it would last three days. Beverly responded that the unions had not given sufficient notice of a strike under federal law and that any strike would therefore be illegal. Most union-member employees at fifteen of Beverly's facilities did not report to work on April 1, 1996, and picket lines were established at these nursing homes. Beverly filled most of the vacant positions with approximately 350 replacement workers, all of whom were hired as regular employees with the understanding that they would not be displaced by bargaining unit employees following the conclusion of the work stoppage.

 On April 4, 1996, the union workers attempted to return to work unconditionally. Beverly informed most of them that they had been replaced and that work no longer existed for them there, although they would be formally retained on employee rolls and would be placed on a preferential hiring list and notified when positions became available. Claimants, all former Beverly employees displaced by replacement workers during the week ending April 6, 1996, filed for unemployment compensation benefits, and Beverly contested their eligibility. The Referee determined that Claimants were eligible for benefits, finding that they had not engaged in willful misconduct and that the work stoppage resulted from a lockout and not a strike. The Board affirmed the referee. This petition for review followed.[1]

---

1. When reviewing an order from the Board, this Court may only determine whether necessary

factual findings are supported by substantial evidence, whether the Board committed an error of

## II

■ Beverly first contends that the Board erred by concluding that Section 402(e) of the Unemployment Compensation Law (Law)[2] did not apply to this case and that Claimants were not ineligible for benefits due to willful misconduct. In *Canonsburg General Hosp. v. Unemployment Compensation Board of Review*, 156 Pa.Cmwlth. 533, 628 A.2d 503 (1993), *aff'd per curiam*, 540 Pa. 531, 658 A.2d 790 (1995), this Court considered unemployment compensation claims under facts similar to those in the case sub judice. The Court held there that "where an employer hires *permanent* replacement employees [to fill striking workers' jobs], absent any evidence in the record and pertinent findings thereon that continuing work was available to the striking workers, the case must be considered as one where the employment relationship has been severed." *Id.*, 156 Pa. Cmwlth. at 547, 628 A.2d at 510 (emphasis in original).

■ Thereafter, in *Scozio Enterprises, Inc. v. Unemployment Compensation Board of Review*, 691 A.2d 1042, 1046 (Pa.Cmwlth. 1997), this Court concluded that *"Canonsburg General Hosp.* requires as a matter of law that the strikers be regarded as having been terminated" when such facts are present and that the cases are properly analyzed under Section 402(e) of the Law. Whether a claimant was discharged is a question of law, the resolution of which is dependent on the facts found by the Board. *Pennsylvania Liquor Control Board v. Unemployment Compensation Board of Review*, 167 Pa.

Cmwlth. 386, 648 A.2d 124 (1994), *appeal denied*, 540 Pa. 615, 656 A.2d 120 (1995).

### A.

■ The replacement workers hired by Beverly retained their jobs after the work stoppage ended; consequently, they were "permanent" replacements under the *Canonsburg General Hosp.* rationale. Also, following the work stoppage, Beverly informed the employees involved in the stoppage that there was no work immediately available to them. Beverly placed the displaced union workers on a preferential hiring list for future job openings, but the potential availability of work at some future time does not constitute "continuing work available to the striking workers" under *Canonsburg General Hosp.* Accordingly, Claimants' employment relationship must be considered by the Court as having been severed, thereby requiring the Court to apply Section 402(e) of the Law to this case.[3] Under the Pennsylvania Supreme Court's holding in *Penflex, Inc. v. Bryson*, 506 Pa. 274, 485 A.2d 359 (1984), where a claimant's employment is terminated by the employer during the course of a work stoppage, the question then becomes whether the claimant was discharged for willful misconduct.

■ Beverly maintains that Claimants caused their unemployment by engaging in willful misconduct, rendering them ineligible for benefits under Section 402(e). Specifically, Beverly argues that Claimants' strike vio-

law or whether constitutional rights were violated. *Keystone Coca–Cola Bottling Corp. v. Unemployment Compensation Board of Review*, 693 A.2d 637 (Pa.Cmwlth.1997). "Substantial evidence" is such evidence as a reasonable mind might accept as adequate to support a conclusion. *Leonard S. Fiore, Inc. v. Department of Labor and Industry, Prevailing Wage Appeals Board*, 526 Pa. 282, 585 A.2d 994 (1991).

2. Act of December 5, 1936, Second Ex.Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 802(e). Section 402 provides in pertinent part:

An employe shall be ineligible for [unemployment] compensation for any week ... (e) [in] which his unemployment is due to his discharge or temporary suspension from work for willful misconduct connected with his work. ...

"Willful misconduct" includes: (1) the wanton and willful disregard of the employer's interest; (2) the deliberate violation of rules; (3) the disregard of standards of behavior that an employer can rightfully expect from an employee; or (4) negligence that manifests culpability, wrongful intent, evil design, or intentional and substantial disregard for the employer's interests or the employee's duties and obligations. *County of Dauphin v. Unemployment Compensation Board of Review*, 161 Pa.Cmwlth. 474, 637 A.2d 699 (1994).

3. *See also Northern Health Facilities v. Unemployment Compensation Board of Review*, 663 A.2d 276 (Pa.Cmwlth.), *appeal denied*, 543 Pa. 698, 670 A.2d 145 (1995) (the permanent replacement of striking workers is tantamount to constructive discharge).

lated the notice provisions of Section 8(g) of the Labor Management Relations Act (LMRA), 29 U.S.C. § 158(g),[4] and that the strike evinced Claimants' disregard for Beverly's interests. The Supreme Court explicitly rejected this argument in *Penflex*, where the claimants arguably failed to comply with the notice requirements of Section 8(d) of the LMRA, 29 U.S.C. § 158(d),[5] before initiating a work stoppage.

The Supreme Court held in *Penflex* that the claimants' strike was not unlawful because it did not constitute a breach of contract; the parties' collective bargaining agreement expired before the work stoppage began. The Court further refused to construe or to apply the LMRA in deciding whether the claimants had engaged in willful misconduct because to do so would represent an intrusion into the jurisdiction of the National Labor Relations Board. It would also require state courts to interpret federal law before they could determine whether a strike is illegal for purposes of deciding an employee's eligibility for unemployment compensation benefits. The Court therefore concludes that the unions' arguable violation of notice provisions of the LMRA does not constitute a

basis for a finding of willful misconduct under Section 402(e) of the Law.[6]

■ In holding that the claimants' strike did not constitute willful misconduct under Section 402(e) of the Law, the Supreme Court also stated in *Penflex* that:

> Involvement in a strike, absent a prohibition contained in a valid collective bargaining agreement, may not properly be viewed as a disregard of standards of behavior which an employer has a right to expect. Workers have a right to engage in a lawful strike and, consequently, they retain a reasonable expectation of continued employment during the work stoppage....
>
> Our holding today is a very narrow one which will not apply in most labor disputes. *Specifically, employees are still ineligible for compensation benefits if they are dismissed for participation in a wildcat strike or one that otherwise contravenes the laws of this state or where, during the course of a legal strike, the employer directs his employees to return to work or suffer dismissal.* In these two situations the errant employees have no reasonable expectation of continued employment and it is not unfair to conclude, when their

---

4. Section 8(g) provides in pertinent part:

 A labor organization before engaging in any strike, picketing, or other concerted refusal to work at any health care institution shall, not less than ten days prior to such action, notify the institution in writing.... The notice, once given, may be extended by the written agreement of both parties.

5. Section 8(d) provides, in pertinent part:

 [W]here there is in effect a collective bargaining contract ... the duty to bargain collectively shall ... mean that no party to such contract shall terminate or modify such contract, unless the party desiring such termination or modification -
 
 ...
 
 (3) notifies the Federal Mediation and Conciliation Service within thirty days after such notice of the existence of a dispute, and simultaneously therewith notifies any State or Territorial agency established to mediate and conciliate disputes within the State or territory where the dispute occurred, provided no agreement has been reached by that time....

6. Beverly also argues that *Penflex* does not apply because the case involved an alleged violation of Section 8(d) of the LMRA, whereas this case involves an alleged violation of Section 8(g).

This distinction is not a meaningful one. Indeed, as the Court reasoned in *Canonsburg General Hosp.*, "[w]hile the facts in *Penflex* are not identical to those here, we believe that the reasoning of that case is appropriate to the circumstances of this case.... The strikers ... failed to comply with certain notice provisions relevant to federal statutes." *Canonsburg General Hosp.*, 628 A.2d at 509. The Court likewise finds no merit to Beverly's arguments that *Penflex* is distinguishable because the employer here is a health care provider and because Penflex did not warn its striking employees before terminating them.

As for Beverly's preemption argument, it is well established that the Law is not preempted by federal labor law. *See, e.g., Schulmerich Carillons, Inc. v. Unemployment Compensation Board of Review*, 154 Pa.Cmwlth. 343, 623 A.2d 921, *appeal denied*, 535 Pa. 642, 631 A.2d 1013 (1993), *cert. denied*, 510 U.S. 1113, 114 S.Ct. 1057, 127 L.Ed.2d 378 (1994). Acknowledging this, Beverly nonetheless reiterates that Claimants' union was the first party to alter the status quo, and it argues that the Board's failure to recognize this undermines the policy of the LMRA. The Court finds no merit to this argument nor perceives any basis for distinguishing *Schulmerich Carillons*, given the arguments presented.

improper labor activities culminate in discharge, that their unemployment has been voluntarily induced.

*Id.* at 295–296, 485 A.2d at 370. (Footnote omitted) (Emphasis added). Beverly argues that the case sub judice falls within the Supreme Court's express limitation on its holding in *Penflex* and that Claimants committed willful misconduct when they violated Beverly's warnings, issued before the work stoppage, that replacement workers would be hired if a work stoppage occurred. The Board made no findings that Beverly issued any directives to its union-member employees to return to work *during* the work stoppage, and absent such directives, the Supreme Court's limitation on its holding in *Penflex* does not apply.

### B.

■ Beverly also argues that Claimants exhibited willful misconduct by failing to follow through with administrative remedies and employer-provided grievance procedures. In support of this argument, Beverly relies on *Goodwill Industries v. Unemployment Compensation Board of Review,* 160 Pa. Cmwlth. 147, 634 A.2d 738 (1993); *McGowan v. Unemployment Compensation Board of Review,* 60 Pa.Cmwlth. 250, 431 A.2d 1102 (1981); and *Houck v. Unemployment Compensation Board of Review,* 45 Pa.Cmwlth. 587, 405 A.2d 1062 (1979). Each of those cases is clearly distinguishable from the case sub judice.

In *Goodwill Industries* the claimant had scheduled a meeting with the employer's executive supervisor to discuss the claimant's concerns. Instead of attending the meeting, the claimant disseminated flyers at a local shopping mall containing various allegations against the employer, and, as a result, the employer fired the claimant. This Court held that the claimant showed an indifference to the employer's interests and that he therefore committed willful misconduct. Unlike *Goodwill Industries,* however, the unions in the case sub judice were in active negotiations regarding new CBAs and attempted privately to resolve their concerns regarding any unfair labor practices. Moreover, Claimants did not initiate the work stoppage until

after an impasse in negotiations had developed and Beverly had made unilateral changes to various terms of the expired contracts.

In *McGowan* the claimant failed to follow the established grievance procedure to present his grievances; instead, the claimant was found by the Board to have initiated a strike and berated the employer's representative with profanities in front of approximately 100 unionized workers. The Court determined, among other things, that the claimant engaged in willful misconduct by his failure to follow established grievance procedures. Unlike *McGowan* there was no grievance procedure to follow here because Beverly had unilaterally eliminated the arbitration phase of the internal grievance procedure following the expiration of the CBAs.

Finally, the claimants in *Houck* sought recognition of a particular union as their collective bargaining representative. The employer refused to recognize the union, and the claimants filed petitions seeking recognition with the Pennsylvania Labor Relations Board. While the petition was pending, the claimants went on strike in an attempt to force the employer to recognize the union. This Court held that the petition procedure would have conclusively established whether the claimants had a right to representation by the union selected, and because they ignored the employer's directive to return to work, they committed willful misconduct rendering them ineligible for benefits.

Here, the NLRB complaints filed by the unions were limited to their charges that Beverly's unilateral changes constituted unfair labor practices. The complaints would not have conclusively resolved all of the issues that precipitated the work stoppage as was the case in *Houck.* The Board found that a part of Claimants' motivation for initiating the work stoppage was to support the unions' bargaining positions on issues wholly separate from the basis for the NLRB complaints.

### III

Beverly next contends that the Board erred by finding that a lockout, rather than a strike, caused the work stoppage and by concluding that Claimants are not ineligible for benefits under Section 402(d) of the Law,

43 P.S. § 802(d), relating to an employee's ineligibility for benefits in any week in which the unemployment is due to a work stoppage because of a labor dispute, other than a lockout. Because the Court has concluded that Section 402(e) governs this case, Section 402(d) cannot apply. As noted in *Scozio Enterprises*, in those cases where permanent replacements are hired, the permanently replaced or terminated employees no longer have any direct interest in the work stoppage for purposes of Section 402(d), and, as a result, those cases are decided under the willful misconduct standard.

■■■ Furthermore, in *Northern Health Facilities v. Unemployment Compensation Board of Review*, 663 A.2d 276 (Pa.Cmwlth.), *appeal denied*, 543 Pa. 698, 670 A.2d 145 (1995), the Court stated:

> [W]hen an employer hires permanent replacements for striking employees, the employer is not only changing the status quo, it is severing the employment relationship. Thus, a claimant's loss of employment is no longer caused by his or her decision to participate in a strike, but is the result of the employer's constructive discharge of the claimant from employment.

*Id.*, 663 A.2d at 278. Based upon the foregoing analysis, the Court concludes that the Board committed an error when it rejected the applicability of Section 402(e) of the Law.

Despite the Board's error, its decision must nonetheless be affirmed because Beverly failed to prove Claimants' willful misconduct under Section 402(e). It is well settled that the Court may affirm an agency or other tribunal on different grounds where the Court agrees with the result reached but disagrees with the reasoning. *See, e.g., Dehus v. Unemployment Compensation Board of Review*, 118 Pa.Cmwlth. 344, 545 A.2d 434 (1988). Claimants are therefore eligible for unemployment compensation benefits.

### ORDER

AND NOW, this 24th day of November, 1997, the order of the Unemployment Compensation Board of Review is affirmed.